IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE with IMEI #353246106968318, AND A SAMSUNG GALAXY Z PHONE, CURRENTLY LOCATED AT THE ATF RICHMOND I OFFICE AT 1011 BOULDER SPRINGS DR SUITE 300, North Chesterfield, VA 23225. | Case No. 3:23sw42 |



## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Roderick Herndon being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Your affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since May 2017. I am a graduate of the Federal Law Enforcement Training Center (FLETC) and the ATF Special Agent Basic Training Academy. I received specialized training concerning violations of the Gun Control Act within Title 18 and the National Firearms Act within Title 26, of the United States Code pursuant to firearm violations. I am a duly sworn agent who is authorized to carry firearms, execute warrants, and make arrests for offenses against the Unites States and to perform such other duties as authorized by law.

2. While employed at ATF, I have been the affiant on several Federal Search Warrants for criminal offenses involving illegal firearms trafficking and narcotics distribution and their associated conspiracies. Furthermore, I have investigated complex cases involving

violent crime, criminal organizations, illegal firearms trafficking, and narcotics distribution that resulted in convictions in both federal and state court.

      3.      I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving the possession with the intent to distribute controlled substances and illegal possession of firearms.

      4.      I am familiar with the methods drug and firearm traffickers use to conduct their illegal activities, to include communication methods, vehicles, text messaging, and narcotics transactions. I received specialized training in narcotics identification, detection, and trafficking, as well as participated in multiple narcotics distribution and firearm interdiction assignments with state and local law enforcement jurisdictions.

      5.      As a part of these investigations, I have interviewed informants and cooperating witnesses; conducted physical surveillance; conducted reviews of telephonic and non-telephonic communications; and obtained and executed search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

      6.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information provided is based upon my personal knowledge, or that of other sworn law enforcement officers participating in this investigation.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

      7.      The property to be searched are an Apple iPhone with IMEI # 353246106968318 (hereinafter **SUBJECT DEVICE 1**) and a Samsung Galaxy Z phone (hereinafter **SUBJECT DEVICE 2**) and contents recovered in a search warrant on February 21, 2023. **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** are currently located at the ATF Richmond I Field

Office, 1011 Boulder Springs Drive, Suite 300, North Chesterfield VA, located in the Eastern District of Virginia. The applied-for warrant request authorization to conduct a forensic examination of **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** for the purpose of identifying electronically stored data particularly described in Attachment B.

### RELEVANT STATUTORY PROVISIONS

8.      **Possession of a Firearm by a Convicted Felon**: 18 U.S.C. §922(g)(1) provides that it is a crime for a convicted felon to possess a firearm and or ammunition.

9.      **Possession with Intent to Distribute a Controlled Substance**: 21 U.S.C. § 841 (a)(1) provides that it is a crime to possess and or distribute controlled substances.

### TECHNICAL TERMS

10.      Based on my training and experience, I use the following technical terms to convey the following meanings:

a. **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video;

3

storing and playing back audio files; storing dates, appointments, and other
information on personal calendars; and accessing and downloading
information from the Internet.  Wireless phones also download applications
("Apps") that are used for a variety of purposes including, but not limited to
social media Apps, communication Apps, payment and banking Apps, map
Apps and digital storage Apps.  Most wireless telephones today also include
global positioning system ("GPS") technology for determining the location of
the device.

b.  **Digital camera**:  A digital camera is a camera that records pictures as digital
picture files, rather than by using photographic film.  Digital cameras use a
variety of fixed and removable storage media to store their recorded images.
Images can usually be retrieved by connecting the camera to a computer or by
connecting the removable storage medium to a separate reader.  Removable
storage media include various types of flash memory cards or miniature hard
drives.  Most digital cameras also include a screen for viewing the stored
images.  This storage media can contain any digital data, including data
unrelated to photographs or videos.

c.  **Portable media player**:  A portable media player (or "MP3 Player" or iPod)
is a handheld digital storage device designed primarily to store and play audio,
video, or photographic files.  However, a portable media player can also store
other digital data.  Some portable media players can use removable storage
media.  Removable storage media include various types of flash memory
cards or miniature hard drives.  This removable storage media can also store

4

any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer connected to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

11.    Based on my training, experience, and research, I know the **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** to have capabilities that allow them to serve as a wireless telephone, digital camera, portable music/media player, connect to the internet, send and receive emails, and/or send and receive text messages. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## PROBABLE CAUSE

12.    The United States, including the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), is conducting a criminal investigation of VINCENT BANKS regarding possible violations of 18 U.S.C. § 922(g)(1) and 21 U.S.C. §841(a)(1).  On January 17, 2023, a federal grand jury returned a true bill of indictment for Vincent Banks on the charges of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1) and Possession with intent to Distribute Methamphetamine in violation of 21 U.S.C. §841(a)(1) related to his arrest on November 27, 2021.

13.    That arrest resulted from the investigation into a stolen vehicle driven by BANKS.  A search of the vehicle resulted in the recovery of a loaded Tisas 45 caliber, Model SS45 pistol, bearing serial number T0620-20Z02263 as well as a Ziplock bag containing a large number of multi-colored tablets suspected of containing Ecstasy/ 3,4-methylenedioxymethamphetamine or commonly known as MDMA was also located in the center console. Virginia Department of Forensic Science (VADFS) analysis of these tablets confirmed that the approximately seven hundred and seventy-two (772) multicolored tablets contained a detectable amount of methamphetamine a schedule II drug.  The total weight was determined to be approximately 174.88 grams.  These amounts were consistent with distribution as opposed to personal use.

14.    A federal search warrant was sought and obtained on two cellular device extractions recovered from BANKS on November 27, 2021. *See* 3:23-sw-13.  It is important to note that your affiant has reviewed information in a prior cell phone extraction that was conducted on Banks' cellular device which involve BANKS distributing narcotics and

possessing firearms. There were photos of BANKS with large quantities of U.S. currency, marijuana, suspected illegal pills, and multiple firearms.







15.    BANKS has a previous conviction for Possession with Intent to Distribute Controlled Substances, in violation of Virginia Code Section 18.2-248.1, on February 21, 2019. Similarly, he has been convicted of Possession of a Firearm by a Convicted Felon, in violation of Virginia Code Section 18.2-308.2, on October 25, 2011.

16.    On February 14, 2023, ATF Special Agent (S/A) Roderick Herndon organized an arrest operation at the office of the Chesterfield Probation and Parole located at 6910 Courthouse Road in Chesterfield, Virginia 23832 to arrest BANKS in relation to the federal indictment. A Senior Probation & Parole Officer contacted and scheduled Banks to come in for a drug screening at 4:30 pm.  Prior to his arrival, agents were positioned inside the building and at multiple points of entry and egress to the parking lot. Just before the scheduled appointment time, agents observed a black in color Volkswagen (displaying Virginia registration UHB8493) entering the parking lot.  Banks was observed exiting the Volkswagen, leaving it unoccupied and then walking into the building.  Banks was subsequently taken into custody without incident.

17.    The Volkswagen was positioned in the front of the building with the engine running.  Agents observed in plain view from outside of the vehicle a firearm positioned in the

10

driver's side floor, partially hidden by the driver's seat. See the attached photo.



18.     After consulting with the United States Attorney's Office, agents opened the door to remove and secure the firearm. The Firearm was identified as a Glock 17, 9 mm pistol, displaying serial number YLS951. The Glock 17, 9 mm pistol, displaying serial number YLS951 shipped in interstate commerce prior to February 14, 2023. While securing the firearm, agents

also observed a digital scale in the driver's side door.  See the attached photo.



19.    Your affiant knows that narcotics traffickers utilize digital scales to weigh

narcotics before distribution. There were rolled up plastic baggies between the driver's seat the

door. Your affiant has come to know that drug traffickers utilize plastic baggies to package and

distribute narcotics. See the attached photo.



20.     Agents also observed an "AVION" tequila canister with what appeared to be some

sort of powder residue on and around the lid. The residue was inconsistent with that of the

smoking ash that was observed throughout the center console. See the attached photo.



21.    During a custodial interview Banks advised that the vehicle was owned by his mother, and he could not give consent to search.  SA Herndon made telephonic contact with Banks' mother J.W.  J.W. advised that the vehicle belonged to her but did not give consent to search the vehicle.  However, J.W. provided that she did not own a firearm.  A registration query through the Virginia Department of Motor Vehicles provided that the vehicle was registered to R.W., J.W.'s husband.  The vehicle was locked and secured and then towed to B&K Towing located at 6930 Dyers Lane, North Chesterfield, Virginia 23225.  The vehicle was sealed with evidence tape and held for the investigation until a search warrant can be obtained.  The vehicle keys remained in the custody of the ATF to ensure no unknown party's access.

22.    On February 21, 2023, a federal search warrant was obtained and then executed on the Volkswagen sedan. *See* 3:23-sw-38.  Prior to the execution of said search warrant, the doors and trunk area were verified as being secured and the evidence tape was observed intact at the hinges of each vehicle access point.  The vehicle doors were then unsecured and a thorough search was conducted.

23.    During the search of the vehicle, the "AVION" tequila canister was recovered from the front passenger seat.  Inside the canister was a clear plastic baggy containing approximately 32 grams of marijuana, and a vacuum seal bag containing multicolored tablets suspected to be methamphetamine (approximately 109 grams).  The multicolored tablets were similar in appearance to those that were recovered from the Ram Pickup Truck on November 27, 2021, by the VSP.  Agents also recovered a black in color digital scale, a small clear plastic baggy containing marijuana, multiple USPS shipping receipts, an Apple iPhone with IMEI # 353246106968318 (hereinafter **SUBJECT DEVICE 1**) and a Samsung Galaxy Z phone

(hereinafter **SUBJECT DEVICE 2**).  The **SUBJECT DEVICES** were found in the center console.

24.      The following are photographs recovered during the execution of the vehicle search warrant:







25.    At the conclusion of the execution of the search warrant, **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** were seized and entered into evidence at the ATF Richmond I Office located at 1011 Boulder Springs Dr, Suite 300, North Chesterfield, Virginia 23225 located in the Eastern District of Virginia.

26.    You affiant also knows that cellular telephones like **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** are important to a criminal investigation into the distribution of illegal narcotics. That is particularly notable where, as here, BANKS has a history of narcotics trafficking and using his cellular phone to do so.

27.    Based on the foregoing, specifically BANKS's recent history of narcotics trafficking and illegal firearms possession observed on cellular phones connected to him, past convictions for drug trafficking and illegal firearms possession, and the evidence of illegal firearms possession and drug distribution recovered from the Volkswagen, your affiant respectfully submits that there is probable cause to search the **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** for evidence of both possession with intent to distribute narcotics and possession of a firearm by a convicted felon.  BANKS has been shown to possess multiple firearms in the past.  There is little reason to believe that additional evidence of the possession of firearms and or narcotics distribution, are not present in the **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2**.

28.    Based on my training and experience, your affiant knows that cellular telephones like the **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** are important to a criminal investigation into the distribution of illegal narcotics.  In particular, I know:

a. that narcotic traffickers often use cellular telephones to communicate with sources of supply, drug transporters, facilitators, and customers in connection with their ongoing drug activities, including communication by live conversations, voice messages, text messages, emails, and similar communication methods all conducted via the cellular telephones that often have internet capabilities;

b.  that narcotic traffickers often use cellular telephones to maintain records, contact information, notes, ledgers, and other records relating to the transportation, ordering, sale, and distribution of controlled substances, even though such documents may be in code. That the aforementioned books, records, notes, ledgers, etc., are commonly maintained where narcotic traffickers have ready access to them, including but not limited to their cellular telephones;

c.  that narcotic traffickers commonly maintain names, addresses and telephone numbers in their cellular telephones for their associates in the narcotic trafficking organization, even if said items may be in code, and that these types of records are sometimes maintained in computers or other electronic data storage devices; and

d.  that many cellular telephones have extensive photography and video capabilities. That many narcotic traffickers frequently use their cellular telephones to take, cause to be taken, photographs and/or videos of themselves, their co-conspirators and associates, their property, and their product, and that these traffickers usually maintain these photographs and/or videos, on their cellular telephone.

29.    In addition, individuals involved in drug trafficking will frequently take photographs of themselves with cellular telephones holding firearms in order to give themselves greater credibility as an established, armed narcotics or firearms trafficker to convey that they will resist any attempts by customers or suppliers to rob them of their drugs and their drug trafficking proceeds. Also, devices like **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** are frequently utilized in day-to-day life. Individuals who may not legally possess firearms may utilize these types of devices to search for firearms or take pictures of firearms that they are

interested in obtaining illegally or communicate pricing with straw purchasers via text message or through the use of communication applications.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on electronic devices.  This information can sometimes be recovered with forensics tools.

31.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of drug trafficking crimes as described herein, but also may provide forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be found on the **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **SUBJECT DEVICE 1** and **SUBJECT 2** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the

entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

Respectfully submitted,

Roderick Herndon
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Reviewed and approved by AUSA Ken Simon

Attested to by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on March 3 , 2023, Richmond, Virginia

/s/ MRC

Mark R. Colombell
United States Magistrate Judge

23

## ATTACHMENT A

The property to be searched is an Apple iPhone with IMEI # 353246106968318 and a Samsung

Galaxy Z phone, seized from a Volkswagen sedan during a search warrant on February 21, 2023.

They currently are located at the Richmond I ATF Field Office 1011 Boulder Springs Dr. Suite

300, North Chesterfield VA, located in the Eastern District of Virginia.

      1.     This warrant authorizes the forensic examination of the devices for the purpose of

identifying the electronically stored information described in Attachment B, which is

incorporated by reference.

1

Apple iPhone IMEI #
353246106968318



Samsung Galaxy Z phone



# ATTACHMENT B

1.     All records in the **SUBJECT DEVICES**, as described in Attachment A, which is

incorporated by reference herein, that relate to violations Title 21, United States Code, Section

841(a)(1), possession with the intent to distribute and distribution of controlled substances, and

violations of Title 18, United States Code, Section 922(g)(1), knowing possession of firearms by

a convicted felon, including:

      a.   Notes, ledgers, messages, and similar records relating to the transportation, ordering, purchasing, and distribution of illegal controlled substances;

      b.   Notes, ledgers, messages, and similar records relating to the ordering, purchasing, and distribution of firearms;

      c.   Address books, phone books, applications ("Apps"), and similar records reflecting names, addresses, telephone numbers and other contact or identification data of customers and suppliers of illegal narcotics and/or firearms;

      d.   Applications and records relating to drug trafficking proceeds and expenditures of money and wealth, including bank records, deposit receipts, investments and cryptocurrency;

      e.   Calendars, applications, and other records of meetings, locations, schedules, and interstate and foreign travel.

      f.   Digital photographs, videos, or audio recordings of target and/or his confederates, assets, controlled substances, expenditure of drug proceeds, and specific locations documented by the cellular device;

      g.   Digital photographs, videos, or audio recordings of target and/or his confederates and firearms;

      h.   Stored communications, including text messages, MMS messages, voicemails, application communications, social media communications.

      i.   Any subscriber or owner information for the cellular telephones.

      j.   Any cellular telephone records, and telephone books or lists, or receipts relating to the acquisition and purchase of cellular telephones, or minutes purchased or applied to cellular telephones.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of devices or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2.      Evidence of user attribution showing who used or owned **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, browsing history and location history.